11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Donelda C. Vaughn, Individually
and as Personal Representative of 

the Heirs and Estate of Ronald Vaughn, Deceased

Appellant

Vs.      
            No. 11-01-00292-CV  -- 
Appeal from Dallas County

Ford Motor
Company et al 

Appellees

 

The issues
in this case concern the exclusion of expert witnesses, the attempted
withdrawal of a response to a request for admission, the granting of a motion
for partial summary judgment, and the granting of motions for directed
verdict.  The plaintiff, Donelda C.
Vaughn, individually and as personal representative of the heirs and estate of
Ronald Vaughn, deceased, filed suit against 42 companies for damages related to
her husband=s injuries and death, which were allegedly
caused by exposure to asbestos.  The
only defendants involved in this appeal are Ford Motor Company; General Motors
Corporation; Daimler Chrysler Corporation; Allied Signal, Inc.; Borg-Warner
Corporation; and Uniroyal Holding Company.[1]  Applying Illinois[2]
substantive law, the trial court granted the defendants= motions for directed verdict and entered a
take-nothing judgment against the plaintiff. 
We affirm.  

                                                                  Issues
Presented








The
plaintiff presents six issues for review. 
In the first and sixth issues, the plaintiff contends that the trial
court erred in granting the defendants= motions for directed verdict. 
In the second issue, the plaintiff contends that the trial court erred
in imposing a Adeath penalty@ sanction when it granted the defendants= motion to exclude all but one of her expert witnesses.  In the third issue, the plaintiff complains
of the exclusion of interrogatory answers filed by some of the defendants in
other cases.  In the fourth issue, the
plaintiff complains of the trial court=s refusal to allow her to withdraw an admission.  In the fifth issue, the plaintiff argues
that the trial court erred in granting Uniroyal=s motion for partial summary judgment. 


                                                             Exclusion
of Witnesses

In her
second issue, the plaintiff contends that the trial court erred in imposing a Adeath penalty@ sanction when it granted the defendants= motion to exclude all but one of her expert witnesses.  The plaintiff=s complaint on appeal is limited to three of these experts: Richard L.
Hatfield; Douglas Alan Pohl, M.D.; and Barry I. Castleman, Sc.D.  For each of these three experts, the
plaintiff filed a bill of exception consisting of an affidavit summarizing the
expert=s proposed testimony.  








The trial
court excluded the plaintiff=s experts because of the plaintiff=s failure to comply with TEX.R.CIV.P. 195 and with the trial court=s scheduling order.  Rule 195.3 mandates that, where no expert report is furnished at
the time of designation, a party seeking affirmative relief Amust make the expert available for deposition
reasonably promptly after the expert is designated.@[3]  The
comment to Rule 195 provides that a party seeking affirmative relief Amust either produce an expert=s report or tender the expert for deposition
before an opposing party is required to designate experts.@  The
plaintiff did not furnish a report with respect to any of these three experts,
and she did not make them available for deposition reasonably promptly after
designation.  

The record
shows that the plaintiff filed the petition in this case on March 5, 1998,[4]
and that this case was the oldest case on the trial court=s docket. 
On March 22, 2000, the trial court set forth the following dates in its
scheduling order:  trial was set for
July 24, 2000; the plaintiff was to produce Aeach Plaintiff@ for
deposition and provide Aexpert medical reports@ no later than May 25, 2000; the defendants were to produce expert
medical reports no later than June 1, 2000; all parties were to designate
testifying experts no later than June 23, 2000; and discovery was to be
completed no later than June 28, 2000.  

On May 19,
2000, the plaintiff faxed her supplemental discovery responses to the
defendants= attorneys. 
In the supplemental response to the defendants= request for disclosure of testifying experts
pursuant to TEX.R.CIV.P. 194.2(f), the plaintiff specifically listed 85 experts
and referenced various other depositions and exhibits filed in other
cases.  Included in this rather extensive
list of experts were Dr. Castleman, Dr. Pohl, and Hatfield.  The plaintiff furnished to the defendants
only one expert report, that of Dr. James A. Robb.  On June 5, 2000, the defendants requested the plaintiff to Aprovide dates for the depositions of any of
[the plaintiff=s] experts who may testify or have opinions
regarding friction products.@  Defense counsel noted, AIf you are hoping for the current trial
setting to be realistic, this will obviously need to happen quickly.@  On
June 7, plaintiff=s
counsel responded but failed to provide any dates for expert depositions.  In the June 7 letter, plaintiff=s counsel stated: 

I will be more than happy to provide you with
depositions of any co-workers and experts whom we intend to rely on in our case
in chief, provided, of course, that you are willing to agree to provide us with
depositions of all witnesses whom you intend to rely on at the trial of this
case.  I will also agree to provide our
witnesses for deposition first, but then you must agree to provide your
witnesses for deposition shortly thereafter. 


 

If you are willing to enter into such an agreement, please contact me
as soon as possible so that I can determine available dates for my
witnesses.  








On June 16, 2000, the
defendants, having received no proposed dates on which to depose the plaintiff=s experts, noticed the depositions of any and
all of the plaintiff=s
experts that may be called to testify regarding friction products or
asbestos-containing brake shoes.  The
depositions were noticed for June 23. 
On June 20, the plaintiff filed a motion to quash the defendants= deposition notices.  The plaintiff notified the defendants on
June 19 that Donelda Vaughn would be available for deposition on July 7, 2000;
that Dr. Castleman would be available for deposition on July 14, 2000, in
Baltimore, Maryland; that Dr. Pohl would be available for deposition on July
17, 2000, in Lewiston, Maine; and that Hatfield would be available for
deposition in Atlanta, Georgia, on July 19, 2000.  In the June 19 notification, plaintiff=s counsel requested that defendants notice
these depositions by 5:00 p.m. on June 21 because Athese witnesses are very busy and cannot keep
dates open for long.@  One defendant noticed the depositions for
those dates but later withdrew its notice due to the untimeliness of the
dates.  On June 23, 2000, in her second
supplemental responses to discovery requests, the plaintiff designated a total
of 97 experts.  

On June
27, 2000, due to the lack of opportunity to timely conduct the depositions and
discover the opinions of the plaintiff=s experts, the defendants filed a motion to exclude the plaintiff=s experts or, alternatively, to compel
discovery, amend the scheduling order, and continue the case.  On July 7, 2000, defense counsel notified
plaintiff=s counsel that the defendants were willing to
agree to a short postponement of the trial to resolve the discovery
issues.  In response, plaintiff=s counsel notified the defendants that Dr.
Pohl and Dr. Castleman were no longer available to be deposed prior to the July
24 trial date, that plaintiff would be available on July 20, and that Hatfield
would be available on July 19.  








The
plaintiff filed a response opposing the defendants= motion for exclusion/continuance.  In the response, the plaintiff cited
TransAmerican Natural Gas Corporation v. Powell, 811 S.W.2d 913 (Tex.1991), and
noted that sanctions which are so severe as to preclude the presentation of the
merits of the plaintiff=s case should not be assessed. 
At the hearing held on July 21, 2000, plaintiff=s counsel argued that the defendants were at
fault and that Athey are going to have to do the best they
can with these witnesses based on the discovery done in the past.@  By that
time, the plaintiff had narrowed the number of experts she planned to call at
trial to six.  The trial court granted
the defendants= motion to exclude all of the plaintiff=s experts except for Dr. Robb.  Dr. Robb testified at trial.  

The
defendants assert on appeal that exclusion of the experts was not a
discretionary sanction but, rather, was automatic under TEX.R.CIV.P. 193.6
(formerly Rule 215.5).  We
disagree.  Rule 193.6(a) provides that
unless good cause or the lack of unfair surprise is shown:

A party who fails to make, amend, or supplement a discovery response in
a timely manner may not introduce in evidence the material or information that
was not timely disclosed, or offer the testimony of a witness (other than a
named party) who was not timely identified. 


Rule 193.6 does not apply
to the circumstances presented in this case. 
Hatfield, Dr. Pohl, and Dr. Castleman were timely identified, and
synopses of their testimony and opinions were disclosed in the plaintiff=s supplemental response.  See Rule 194.2(f).  

Therefore,
we must determine whether the trial court abused its discretion in excluding
the experts as a discretionary sanction under TEX.R.CIV.P. 215 for the abuse of
discovery.  A trial court abuses its
discretion when it acts without reference to any guiding rules and
principles.  Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.1985), cert. den=d, 476 U.S. 1159 (1986).  When
imposing sanctions for discovery abuses, a trial court must look to the Texas
Rules of Civil Procedure for guiding rules and principles.  Downer v. Aquamarine Operators, Inc., supra
at 242. 

Rule 215.2
requires that the sanction imposed be Ajust.@  See
TransAmerican Natural Gas Corporation v. Powell, supra at 917 (applying a
former, similar version of Rule 215 that also required the sanction to be Ajust@).  The court in TransAmerican
set forth the following standards as setting the bounds for permissible
discretionary sanctions under Rule 215:








In our
view, whether an imposition of sanctions is just is measured by two
standards.  First, a direct relationship
must exist between the offensive conduct and the sanction imposed.  This means that a just sanction must be
directed against the abuse and toward remedying the prejudice caused the
innocent party.  It also means that the
sanction should be visited upon the offender. 
The trial court must at least attempt to determine whether the offensive
conduct is attributable to counsel only, or to the party only, or to both.  This we recognize will not be an easy matter
in many instances.  On the one hand, a
lawyer cannot shield his client from sanctions;  a party must bear some responsibility for its counsel=s discovery abuses when it is or should be
aware of counsel=s conduct and the violation of discovery
rules.  On the other hand, a party
should not be punished for counsel=s conduct in which it is not implicated apart from having entrusted to
counsel its legal representation.  The
point is, the sanctions the trial court imposes must relate directly to the
abuse found.

 

Second, just sanctions must not be excessive.  The punishment should fit the crime.  A sanction imposed for discovery abuse should be no more severe
than necessary to satisfy its legitimate purposes.  It follows that courts must consider the availability of less
stringent sanctions and whether such lesser sanctions would fully promote
compliance.

TransAmerican Natural Gas
Corporation v. Powell, supra at 917.  

The Texas
Rules of Civil Procedure also include two discovery rules that favor less
stringent sanctions and indicate that the sanctions imposed in this case were
excessive.  Rule 195.3(a)(1) and Rule
190.5 generally require a trial court to extend the deadlines and allow
additional discovery to give the parties an adequate opportunity to complete
discovery.   Rule 195.3(a)(1) provides
that, when a Adeposition cannot B due to the actions of the tendering party B reasonably be concluded more than 15 days
before the deadline@ for
the party not seeking affirmative relief to designate its experts, Athat deadline must be extended.@  Rule
190.5 provides that the trial court Amust allow additional discovery@ related to new information disclosed in a discovery response if the
response was made after or near the deadline for completion of discovery such
that the adverse party would be denied an adequate opportunity to conduct
discovery regarding the new matters and if the adverse party would otherwise be
unfairly prejudiced.  

The
plaintiff had a duty under Rule 195.3 to make her experts available reasonably
promptly after designation.  The
plaintiff did not comply with this duty. 
The plaintiff supplemented her discovery responses to designate a total
of 97 experts and narrowed the list to 6 only shortly before the trial
date.  The plaintiff then opposed the
defendants= request for additional time to depose the
plaintiff=s experts and complete discovery.  Although this conduct, which was
attributable to plaintiff=s counsel, was sanctionable, we find that the sanctions imposed in this
case were excessive.  Thus, we must hold
that the trial court abused its discretion. 
TransAmerican Natural Gas Corporation v. Powell, supra.

                                       Reversible
Error, Directed Verdict, and Illinois Law








Having
found error, we must next determine if the error is reversible.  TEX.R.APP.P. 44.1.  An error is reversible if it Aprobably caused the rendition of an improper judgment.@  Rule
44.1(a).  The error in this case
prevented the plaintiff from introducing expert testimony regarding the amount
of asbestos generated by working with asbestos-containing products and the link
between Vaughn=s inhalation of asbestos dust and his
mesothelioma.  The plaintiff asserts
that the error ultimately resulted in a directed verdict in favor of the
defendants.  However, the defendants
contend that, regardless of the lack of expert testimony, the trial court
properly granted their motions for directed verdict.  

The
defendants that manufactured brake products -- Ford, General Motors, Chrysler,
Allied Signal, and Borg-Warner -- contend that directed verdicts in their favor
were appropriate because the plaintiff failed to introduce evidence to satisfy Athe frequency, regularity and proximity test@ that is the law in Illinois.  Thacker v. UNR Industries, Inc., 603 N.E.2d
449, 457 (Ill.1992).  In Thacker,
the Illinois Supreme Court adopted the frequency, regularity, and proximity
test to be applied to the element of causation.  Under this test, a plaintiff must show that the injured worker
was exposed to the defendant=s asbestos through proof that (1) he regularly worked in an area where
the defendant=s asbestos was frequently used and (2) he
worked sufficiently close to this area so as to come into contact with the
defendant=s product. 
The court adopted this approach in an Aattempt to seek a balance between the needs of the plaintiff (by
recognizing the difficulties of proving contact) with the rights of the
defendant (to be free from liability predicated upon guesswork).@ 
Thacker v. UNR Industries, Inc., supra at 457.  When applying the frequency, regularity, and proximity test to
cases involving multiple defendants, the courts in Illinois and in other
jurisdictions determine whether the test has been met as to each defendant, rather
than the defendants collectively, even though these courts recognize that there
can be more than one cause of an injury. 
See Robertson v. Allied Signal, Inc., 914 F.2d 360 (3d Cir. 1990);
Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1162-64 (4th Cir. 1986);
Chavers v. General Motors Corporation, 79 S.W.3d 361 (Ark.2002)(an asbestos
case against brake manufacturers); Johnson v. Owens-Corning Fiberglass
Corporation, 672 N.E.2d 885, 889-92 (Ill. App. 3d Dist. 1996), appeal den=d, 677 N.E.2d 965 (Ill.1997); see also Ford Motor Company v. Wood, 703
A.2d 1315 (Md. Ct. Spec. App.), cert. den=d, 709 A.2d 139 (Md.1998).  








In the
present case, the only evidence offered regarding product identification and
the frequency, proximity, and regularity of the exposure to the products was
the testimony of Ronald Vaughn by videotaped and written deposition.  Vaughn testified that he was 45 years old
and that he worked as an auto mechanic for approximately 3 years in the early
1970s.  Among his various duties was
replacing brake shoes.  He testified
that he inhaled the dust from these brake shoes when he removed the old ones,
which contained no identifying marks, and when he ground the replacements to
fit.  According to Vaughn, he did a
brake job almost every day, but he could not estimate what percent of his time
was spent doing brake work.  Vaughn
testified that he installed the brake products of Borg-Warner, Bendix
(attributed to Allied Signal), Wagner (who was not a defendant at the time of
trial), Ford, General Motors, and Chrysler. 
Vaughn stated that he recalled seeing these names on the boxes that he
opened.  Vaughn testified that he
generally installed whatever brand of product was stocked by the supply
house.  He did not remember the name of
the supply house.  No other witnesses
testified regarding product identification or frequency of use; and no
documentary evidence, such as invoices for brake products from a supply house
to Vaughn=s places of employment, was introduced.  Vaughn was asked the following question
regarding the frequency of product use: 
AAnd you used them all equally, one more than
another, one less than another?@  Vaughn replied, AI couldn=t tell you.@  

We find
the present case to be somewhat similar to Ford Motor Company v. Wood, supra,
and Chavers v. General Motors Corporation, supra.  In Wood, the court applied the frequency, proximity, and
regularity test in an asbestos-related brake case.  The court held that, although the plaintiff presented sufficient
evidence from which a jury could infer that the injured worker=s exposure to asbestos-containing brake and
clutch products was a cause of his mesothelioma, the plaintiff failed to
present sufficient evidence to create a jury question as to Ford=s liability because the plaintiff failed to
meet the frequency, proximity, and regularity test regarding the worker=s exposure to brake and clutch products
manufactured by Ford as opposed to another manufacturer. Ford Motor Company v.
Wood, supra.  In Chavers, the
court applied the frequency, regularity, and proximity test to uphold the
granting of a summary judgment in favor of brake manufacturers.  Chavers was a Ashade tree mechanic@ who replaced the brakes on cars for family and friends for 44
years.  Chavers identified the brands of
replacement brakes that he used, but the brakes he removed were generally
unidentifiable.  Chavers v. General
Motors Corporation, supra.








Likewise,
we hold that the plaintiff failed to produce any probative evidence to satisfy
the frequency element of the test adopted by Illinois.  A directed verdict is proper if, when viewed
in the light most favorable to the party against whom the verdict was directed,
there is no evidence of probative value that raises a material fact issue.  Prudential Insurance Company of America v.
Financial Review Services, Inc., 29 S.W.3d 74, 77 (Tex.2000); Qantel Business
Systems, Inc. v. Custom Controls Company, 761 S.W.2d 302, 303-04
(Tex.1988).  Although there was evidence
from which a jury could have found that Vaughn=s exposure to asbestos-containing brake products was a cause of his
disease and evidence that each exposure contributed to his disease, there was
no evidence from which a jury could have found that Vaughn was frequently
exposed to any particular defendant=s brake product.  Because a
directed verdict in favor of each defendant brake manufacturer was proper on
this ground and because nothing in the bills of exception regarding the
excluded expert witnesses indicates any bearing on the issue of product
identification or the frequency of Vaughn=s exposure to a particular product, the error in excluding the
witnesses did not cause the rendition of an improper judgment.  See Rule 44.1.  Consequently, we hold that the error in excluding those experts
was harmless as to Ford, General Motors, Chrysler, Allied Signal, and
Borg-Warner.  

The
directed verdict in favor of Uniroyal was also proper on grounds unrelated to
the error in excluding the witnesses. 
The plaintiff=s
claim against Uniroyal was limited at trial to an intentional tort cause of
action -- a claim that Uniroyal specifically intended to injure Vaughn.  Nothing in the record or the bills of
exception indicates that the excluded experts= testimony would have had any bearing on the plaintiff=s intentional tort claim against
Uniroyal.  Consequently, the exclusion
of those experts did not Aprobably cause@ the
rendition of an improper judgment in favor of Uniroyal.  Rule 44.1. 









We hold,
therefore, that the error in excluding Hatfield, Dr. Pohl, and Dr. Castleman is
not reversible error.  The second issue
is overruled.  The first issue, in which
the plaintiff argues that instructing a verdict in favor of the brake
manufacturers was erroneous, is overruled because the plaintiff presented no
probative evidence of the frequency of Vaughn=s exposure to any particular defendant=s asbestos-containing product. 
We need not reach the merits of the third issue, which concerns the
exclusion of interrogatory answers filed by some of the non-Uniroyal defendants
in other cases, because those answers have no bearing on the propriety of the
directed verdicts.  TEX.R.APP.P.
47.1.  The interrogatories do not relate
to the frequency with which Vaughn used any brake products or to the plaintiff=s intentional tort claim.  

                                              Denial
of Request to Withdraw Admission

In her
fourth issue, the plaintiff contends that the trial court erred by denying her
request to withdraw an admission that she had made regarding Uniroyal=s status as Vaughn=s former employer.  The record shows that, on February 25, 1999, the plaintiff
responded to Uniroyal=s
request for admissions by admitting that Vaughn Awas employed by Uniroyal when he worked at the garage Uniroyal leased
from K-Mart in Joliet, Illinois.@  On July 17, 2000, only one
week before trial, the plaintiff requested leave to amend her admission to
state that she was unable to admit or deny that Vaughn was employed by
Uniroyal.  Attached to the motion was an
itemized statement from the Social Security Administration that was sent to
plaintiff=s counsel on March 9, 2000.  This statement reflected that Vaughn had
earnings in 1971 and 1972 from AMoline Tire Service, Inc.@  

A trial
court has discretion, pursuant to TEX.R.CIV.P. 198.3, to permit a party to
withdraw an admission if the party shows good cause and if the trial court
finds that the party relying on the admission will not be unduly
prejudiced.  See Stelly v. Papania, 927
S.W.2d 620, 622 (Tex.1996).  In this
case, the trial court held a hearing on the plaintiff=s motion requesting leave to amend; however,
that hearing was held off the record and is not part of the appellate
record.  The trial court subsequently
stated on the record that it had denied the motion.  We are unable to determine from the appellate record whether the
trial court abused its discretion in denying the plaintiff=s request. 
Moreover, we note that Vaughn=s deposition testimony unequivocally reflects that he worked for
Uniroyal in a garage located at a K-Mart and that K-Mart leased the garage to
Uniroyal through a division of Uniroyal. 
The fourth issue is overruled.  

                                                  Uniroyal=s Partial Summary Judgment








In the
fifth issue, the plaintiff contends that the trial court erred in granting
Uniroyal=s motion for partial summary judgment.  In its order granting partial summary judgment,
the trial court dismissed the plaintiff=s negligence, gross negligence, and strict liability claims against
Uniroyal because of Uniroyal=s employer/employee relationship with Vaughn.  In Illinois, the Workers= Compensation Act and the Workers= Occupational Diseases Act provide the exclusive remedy for claims
against employers unless the injury was not accidental, was not employment
related, or was not compensable under the Acts.  Handley v. Unarco Industries, Inc., 463 N.E.2d 1011, 1021-22
(Ill. App. 4th Dist. 1984); see Meerbrey v. Marshall Field and Company, Inc.,
564 N.E.2d 1222 (Ill.1990).  

We will
apply the well‑recognized standard of review for traditional summary
judgments.  We must consider the summary
judgment evidence in the light most favorable to the non‑movant,

indulging all reasonable
inferences in favor of the non-movant, and determine whether the movant proved
that there were no genuine issues of material fact and that it was entitled to
judgment as a matter of law.  Nixon v.
Mr. Property Management Company, Inc., 690 S.W.2d 546 (Tex.1985); City of
Houston v. Clear Creek Basin Authority, 589 S.W.2d 671 (Tex.1979).  In order for a defendant to be entitled to
summary judgment, the defendant must either disprove an element of each cause
of action or establish an affirmative defense as a matter of law.  American Tobacco Company, Inc. v. Grinnell,
951 S.W.2d 420, 425 (Tex.1997); Science Spectrum, Inc. v. Martinez, 941 S.W.2d
910, 911 (Tex.1997).  

In support
of its motion, Uniroyal attached the plaintiff=s admission that Uniroyal was Vaughn=s employer and Vaughn=s deposition testimony indicating that he was employed by
Uniroyal.  These documents established
Uniroyal=s status as Vaughn=s employer. 
The reporter=s
record from the motions hearing reveals that the trial court struck the summary
judgment evidence relied upon by the plaintiff.  Accordingly, we will not consider that evidence.  As Vaughn=s employer, Uniroyal was entitled to judgment as a matter of law on the
causes of action that did not fall into an exception to the Illinois exclusive
remedy provisions.  We hold that the
trial court properly granted Uniroyal=s motion for partial summary judgment. 
The fifth issue is overruled. 

                                                         Uniroyal=s Directed Verdict








After the
close of the plaintiff=s
evidence, the trial court granted not only the brake manufacturers= motions for directed verdict, but also
Uniroyal=s motion for directed verdict.  The only cause of action remaining against
Uniroyal was an intentional tort claim under which the plaintiff must have
produced some probative evidence that Uniroyal intended to injure or harm
Vaughn.  See Handley v. Unarco
Industries, Inc., supra; see also Bercaw v. Domino=s Pizza, Inc., 630 N.E.2d 166 (Ill. App. 2d
Dist. 1994); Copass v. Illinois Power Company, 569 N.E.2d 1211 (Ill. App. 4th
Dist.), appeal den=d, 580 N.E.2d 110
(Ill.1991).  The plaintiff failed to
produce any such evidence.  The
plaintiff produced evidence showing that Uniroyal was aware of the dangers
posed by asbestos and that a Uniroyal Aasbeston@ plant in Georgia had reported some OSHA
violations.  However, the plaintiff
produced no evidence regarding the conditions of the service center where
Vaughn was employed or Uniroyal=s knowledge of any such conditions. 
There was no evidence from which a jury could have inferred that
Uniroyal intended to injure Vaughn or that Uniroyal directed, encouraged, or
committed an intentional tort.  Because
the plaintiff failed to produce any probative evidence on this issue, Uniroyal
was entitled to a directed verdict.  See
Prudential Insurance Company of America v. Financial Review Services, Inc.,
supra; Qantel Business Systems, Inc. v. Custom Controls Company, supra.  The sixth issue is overruled. 

The
judgment of the trial court is affirmed. 


 

AUSTIN McCLOUD

SENIOR
JUSTICE

October 24, 2002

Publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of:  Arnot, C.J., and 

McCall, J., and McCloud, S.J.[5]











     [1]We note that the plaintiff also appealed with respect
to United States Gypsum Company. 
However, because of United States Gypsum Company=s bankruptcy proceeding, this court entered an order of
severance.  The appeal with respect to
United States Gypsum Company, Cause No. 11-00-00299-CV in this court, remains
abated pending the resolution of the bankruptcy proceeding. 





     [2]The parties agreed at trial and on appeal that Illinois
substantive law controls this case.  





     [3]Rule 195.3 reads in full as follows:

 

(a) Experts for Party
Seeking Affirmative Relief.  A party
seeking affirmative relief must make an expert retained by, employed by, or
otherwise in the control of the party available for deposition as follows:

 

(1) If no report
furnished.  If a report of the expert=s factual observations, tests, supporting data,
calculations, photographs, and opinions is not produced when the expert is
designated, then the party must make the expert available for deposition
reasonably promptly after the expert is designated.  If the deposition cannot B due
to the actions of the tendering party B
reasonably be concluded more than 15 days before the deadline for designating
other experts, that deadline must be extended for other experts testifying on
the same subject.  

 

(2) If report furnished.  If a report of the expert=s factual observations, tests, supporting data,
calculations, photographs, and opinions is produced when the expert is
designated, then the party need not make the expert available for deposition
until reasonably promptly after all other experts have been designated.  

 

(b) Other Experts.  A party not seeking affirmative relief must
make an expert retained by, employed by, or otherwise in the control of the
party available for deposition reasonably promptly after the expert is
designated and the experts testifying on the same subject for the party seeking
affirmative relief have been deposed.  





     [4]The record indicates that the plaintiff had originally
brought suit in Lamar County but that she had subsequently dismissed that case
and then refiled it in Dallas County on March 5, 1998.  





     [5]Austin McCloud, Retired Chief Justice, Court of
Appeals, 11th District of Texas at Eastland sitting by assignment.