James CROCKETT *v.* COUNSELING SERVICES of EASTERN ARKANSAS, INC.

CA 03–829 154 S.W.3d 278

Court of Appeals of Arkansas
Division I
Opinion delivered March 10, 2004

374

*E. Dion Wilson*, for appellant.

*Robert F. Thompson III*, for appellee.

TERRY CRABTREE, Judge. This is an appeal from an order of summary judgment dismissing appellant, James Crockett's, complaint brought under the Arkansas Civil Rights Act against his former employer, appellee Counseling Services of Eastern Arkansas. Appellant contends on appeal that the trial court erred in concluding that he failed to establish a *prima facie* case of racial discrimination. We affirm.

Appellant, an African-American and a graduate of the University of Arkansas at Monticello, was hired in 1990 by appellee's predecessor as an activity therapist. Appellee provides services to persons with special needs, and as an activity therapist, appellant assisted its clients with daily-living activities in an effort to mainstream them back into the community. His duties consisted of transporting clients to the center, on errands and to doctor's appointments, preparing meals, helping clients with their laundry, and completing paperwork for billing purposes. Appellant remained in that position until he was discharged on October 24, 2001. In January 2002, appellant was awarded unemployment benefits by an appeals-tribunal referee of the Arkansas Employment Security Department, based on a finding that he was discharged for reasons which did not constitute misconduct in connection with the work. Appellant thereafter filed the present lawsuit asserting a claim under the Arkansas Civil Rights Act by contending that his termination was racially motivated.

Appellee filed a motion for summary judgment in which it maintained that it had fired appellant because of inappropriate behavior, and it contended that appellant had not made a *prima facie* showing of discrimination because there was no evidence to suggest that his discharge was race-related. In support of the motion, appellee referred to selected excerpts from appellant's deposition, and it provided the affidavit of Chester Gentry, appellant's supervisor, along with supporting documentation.

In his affidavit, Mr. Gentry, who is an African-American, stated that he had investigated several complaints that had been received about appellant's behavior in the months preceding his termination. In August 2001, a client reported that appellant had breached confidentiality by disclosing to her employer that she was considering quitting her job to attend college. In September 2001, a client alleged that appellant had tried to start a fight with him and had put his hand in the client's face. This client also reported that appellant picked on clients and tried to "touch all of the women." In October 2001, a female client complained that appellant had used crude and profane language around her, had made sexual comments to her, had asked about her sexual activities with her husband, and had volunteered information about his own sexual activities. The client also alleged that appellant had hung a client's underwear from the rear-view mirror of the van and had touched clients in inappropriate ways. Gentry stated that appellant was discharged following the investigation of these complaints. Gentry further stated that an African-American woman had been hired to fill appellant's position. He stated that he did not discharge appellant because of his race.

In his deposition, appellant testified that he did not know why he had been fired. He said that no one had told him that he was being fired because of his race and that he could not remember anyone ever making any racial comments at the workplace. Appellant also stated that no one had said anything to make him think that he was being discriminated against on account of his race.

In response to the summary-judgment motion, appellant argued that he had made a *prima facie* showing that race was a motivating factor for his discharge. He contended that improper racial motivation is not lacking just because the persons who fired and replaced him were both African-Americans. He also argued that he had shown that a similarly-situated individual had not been fired. This was in reference to his deposition testimony stating that a complaint of improper sexual behavior had been levied against Mr. Gentry but had been "swept under the rug." Appellant further contended that, based on the appeals tribunal's decision that he was fired for reasons that did not constitute misconduct, appellee was prohibited under the doctrine of collateral estoppel from asserting the complaints that had been made against him as non-discriminatory reasons for his discharge.

In a letter opinion, the trial court granted the motion for summary judgment by ruling that appellant had failed to establish a *prima facie* case of racial discrimination. The court also noted that, even if a *prima facie* case had been established, appellee had shown that appellant was terminated for legitimate, non-discriminatory reasons. The court thus rejected appellant's contention that appellee was barred by collateral estoppel from asserting the alleged acts of inappropriate behavior as grounds for the termination. The court reasoned that the issue before the appeals tribunal differed from the issue that was before the court.

Appellant argues on appeal that the trial court erred in concluding that he had failed to establish a *prima facie* case of racial discrimination. Appellant also maintains the position that collateral estoppel precludes consideration of the reasons appellee offered to justify the termination decision.

 This case comes to us on the grant of a motion for summary judgment. We have ceased referring to summary judgment as a drastic remedy, and we now regard it simply as one of the tools in a trial court's efficiency arsenal. *Addington v. Wal-Mart Stores, Inc.,* 81 Ark. App. 441, 105 S.W.3d 369 (2003). The standards governing motions for summary judgment are as follows:

> As we have often stated, summary judgment is to be granted by a trial court if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried.
>
> ... Once a moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties.

*Chavers v. General Motors Corp.,* 349 Ark. 550, 558-59, 79 S.W.3d 361, 367 (2002) (citations omitted).

Because of the way the issues are framed, we must first address appellant's contention that collateral estoppel precludes any consideration of the reasons appellee advanced for its discharge of appellant. In this regard, appellant argues that the appeals tribunal's decision established that he was not fired for misconduct in connection with the work and that this determination prohibits appellee from relying on its stated reasons for his termination.

■ The doctrine of collateral estoppel, or issue preclusion, does bar the relitigation of issues of law or fact actually litigated in a former suit, provided that the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question. *Beaver v. John Q. Hammons Hotels*, 355 Ark. 359, 138 S.W.3d 664 (2003). Decisions of the appeals tribunal become final if not timely appealed to the Board of Review. Ark. Code Ann. § 11-10-524(c)(2) (Supp. 2003). When an administrative body acts judicially or quasi-judicially, its decisions may be given preclusive effect. *See Hamilton v. A.P.C. & E. Comm'n.*, 333 Ark. 370, 969 S.W.2d 653 (1998).

■ Ordinarily, collateral estoppel is relied upon by a defendant to preclude the plaintiff from relitigating an issue that has previously been decided adversely to the plaintiff. *Johnson v. Union Pacific Railroad*, 352 Ark. 534, 104 S.W.3d 745 (2003). Here, however, the doctrine is being wielded by the plaintiff to prevent the defendant from litigating an issue alleged to have been decided adversely to the defendant in a previous action. Our supreme court has observed that the offensive use of collateral estoppel is "more controversial" than the defensive use of the doctrine. *Fisher v. Jones*, 311 Ark. 450, 456, 844 S.W.2d 954, 958 (1993). Nevertheless, the court has pronounced that collateral estoppel may be used as an offensive weapon in the courts of this state. *Johnson v. Union Pacific Railroad*, 352 Ark. 534, 104 S.W.3d 745 (2003).

■ In *Johnson, id.*, the court adopted the approach taken by the Supreme Court in *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979). The court ruled that the offensive use of collateral estoppel should be available only in limited circumstances and that trial courts are to be given broad discretion to determine if it should be applied in any given case. Discretionary, rather than mandatory, application was favored in recognition of the fact that the offensive use of the doctrine does not promote judicial

economy in the same way that defensive estoppel does and that its use may result in unfairness to a defendant.

■ The court noted the Supreme Court's observation in *Parklane Hosiery* that the offensive use of collateral estoppel may be unfair, particularly under circumstances where the defendant in the first action is sued for small or nominal damages and thus may not have had a great incentive to defend vigorously; where the judgment relied upon is itself inconsistent with one or more previous judgments in favor of the defendant; or where the second action affords the defendant procedural opportunities unavailable in the first action that could cause a different result. In the end, the *Johnson* court determined that collateral estoppel should not be applied in that case because it would result in unfairness to the defendant.

■ For collateral estoppel to apply at all, however, four elements must be established: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment. *Cox v. Keahey,* 84 Ark. App. 121, 133 S.W.3d 430 (2003). We believe that the first and second elements of this test were not met.

■ Arkansas Code Annotated section 11-10-514(a)(1) (Repl. 2002) provides that an individual shall be disqualified for unemployment benefits if he is discharged from his last work for misconduct in connection with the work. For purposes of unemployment compensation, the term "misconduct" has a particularized meaning. It is defined as: (1) disregard of the employer's interest; (2) violation of the employer's rules; (3) disregard of the standards of behavior which the employer has a right to expect of his employees; and (4) disregard of the employee's duties and obligations to the employer. *Maxfield v. Director,* 84 Ark. App. 48, 129 S.W.3d 298 (2003). There is an element of intent associated with a determination of misconduct on the part of the employee. *Id.* Therefore, mere unsatisfactory conduct, ordinary negligence, or good-faith errors in judgment in judgment or discretion are not considered misconduct unless they are of such a degree or recurrence as to manifest wrongful intent, evil design, or an intentional disregard of the employer's interests. *Id.* Whether an employee's acts are willful or merely the result of unsatisfactory

conduct or unintentional failure of performance is a fact question to be resolved by the administrative agency. *See id.*

Under these standards, the inquiry before the appeals tribunal was to determine whether the alleged acts of inappropriate behavior that prompted appellant's termination rose to the level of that kind of misconduct as to render him ineligible for unemployment compensation. The appeals tribunal found only that appellant was discharged for reasons that did not amount to misconduct under unemployment compensation law. The issue to be determined in the case before us is whether appellee improperly discharged appellant because of his race. The issues in the two cases are fundamentally different, and there is no indication in the record that the issue of racial motivation was actually interjected by appellant in the unemployment-benefit proceeding. Therefore, we hold that collateral estoppel does not apply and that the reasons appellee gave for discharging appellant can be considered in this case.

Turning now to the primary issue in this appeal, the Arkansas Civil Rights Act grants to qualified persons the right to be free from employment discrimination because of race. Ark. Code Ann. § 16-123-107(a)(1) (Supp. 2001). The Act expressly instructs us to look to federal civil-rights law when considering claims brought under the Act. Ark. Code Ann. § 16-123-105(c) (Supp. 2003); *Island v. Buena Vista Resort*, 352 Ark. 548, 103 S.W.3d 671 (2003).

As here, where a plaintiff is unable to produce evidence that directly reflects the use of an illegitimate criterion in the challenged decision, the employee may proceed under the now-familiar three-step analytical framework described in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).[1] *Flentje v. First National Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531 (2000). Under this test, the burden of persuasion never leaves the plaintiff, but there is a shift in the burden to come forward with evidence: (1) the plaintiff must present a *prima facie* case consisting of four distinct elements; (2) the defendant must rebut the *prima facie* case by showing non-discriminatory reasons for the termination; and (3) the plaintiff must show the reasons are pretextual. *Id.* The four

---

[1] Another test, known as the "mixed-motive" analysis promulgated by the Supreme Court in *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989), applies when there is direct evidence of discriminatory intent. *See Thomas v. First Nat'l Bank of Wynne,* 111 F.3d 64 (8th Cir. 1997).

elements that are necessary to establish a *prima facie* case of racial discrimination are: (1) that he is in the protected class; (2) that he met applicable job qualifications; (3) that his employment was terminated; and (4) that there is some additional showing that race was a factor in the termination. *See id.* The importance of the *prima facie* showing is that it creates the inference that the employer terminated the employee for an impermissible reason. *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771 (8th Cir. 1995).

In this case, the appellant satisfied the first three prongs of the *prima-facie* test. At issue is whether he succeeded in making some additional showing to support an inference that race was a factor in the termination decision. It is our conclusion that appellant failed in this burden.

 The record shows that appellant was discharged by an African-American and that he was replaced by an African-American. Although we accept appellant's premise that it cannot be presumed that persons would not discriminate against members of their own race, *see Robinson v. Sears, Roebuck and Co.*, 111 F. Supp.2d 1101 (E.D. Ark. 2000), appellant offered no evidence at all to show that race played any role in his supervisor's decision. We cannot assume that there was an improper motive without some evidence suggesting discriminatory intent. Our opinion in this regard is buttressed by appellant's deposition testimony that there was no racial animus present in the workplace and that he had no sense that he had been discriminated against because of his race. Moreover, appellant testified that he did not know why he had been fired and that he had filed this lawsuit in an effort to find out.

 As for appellant's contention that he had been treated more harshly than a similarly-situated individual, the incident appellant refers to involved previous accusations of sexual impropriety made against both appellant and Mr. Gentry. Not to belabor the point, but again it should be noted that Mr. Gentry is an African-American and thus falls within the same protected group as the appellant. And by contrast, the present accusation was the second such complaint made against appellant, whereas no other had been made against Mr. Gentry. In addition, there were two other complaints registered against appellant for fighting and disclosing confidential information. The lone accusation made against Mr. Gentry is not in any way comparable to the charges

that were lodged against the appellant just prior to his termination. Thus, we are unable to say that Mr. Gentry was similarly situated to appellant. *See Gilmore v. AT &T,* 319 F.3d 1042 (8th Cir. 2002) (persons used as comparators were not considered similarly situated because some were of the same protected class and others committed acts that were not comparable in severity or frequency); *Williams v. Saint Luke's-Shawnee Mission Health System, Inc.,* 276 F.3d (8th Cir. 2001) (court rejected similarly-situated claim where the accusations made against the plaintiff were more serious and more numerous than the offenses of the other employees).

From our review of the record, we agree with the trial court's conclusion that appellant failed to establish a *prima facie* case because he presented no evidence from which racial discrimination could be inferred. Appellee was thus entitled to judgment as a matter of law.

Affirmed.

HART and ROAF, JJ., agree.