**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2004-IA-01021-SCT**

*GORMAN-RUPP COMPANY*

*v.*

*BOBBY G. HALL, ET AL.*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/19/2004 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JENNIFER MARIE STUDEBAKER |
| | THOMAS W. TARDY, III |
| | T. HUNT COLE, JR. |
| ATTORNEYS FOR APPELLEES: | STACEY L. SIMS |
| | ANTHONY SAKALARIOS |
| | ALISON ANN DARSEY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 08/11/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1. This asbestos case is before the Court on interlocutory appeal. The Gorman-Rupp
Company (Gorman) filed the petition for interlocutory appeal challenging the trial court's
order denying its motion for summary judgment and its subsequent motion for reconsideration
of the motion for summary judgment.[1] The complaint filed on October 10, 2002, in the Circuit

---

[1] While the motion for summary judgment was to all seven plaintiffs, the motion
for reconsideration was only as to Plaintiff, Bobby Hall. At the time of the reconsideration,
the trial court had already severed the other four plaintiffs and dismissed two plaintiffs as to

Court of Adams County, Mississippi, alleged personal injuries related from exposure to asbestos products.

¶2.     Seven plaintiffs were named in the complaint, Bobby G. Hall, Thurman Ferguson, Delano Reeves, Israel Stewart, Jr., Wilbert White, Aubrey Arnold, and James Hemphill. Despite having various employments over their work histories, each of the plaintiffs shared a common work site, International Paper (IP), located in Natchez, Mississippi.

¶3.     Two hundred and seventy-four (274) companies and corporate defendants were named in the complaint, as well as, John Does 1-100 (all unidentified manufacturers, suppliers, distributors and installers of asbestos-containing products) and 101-200 (all unidentified associations and organizations which conspired with the manufacturers, suppliers, distributors and installers of asbestos-containing products).   Gorman, a pump manufacturer, was one of the named defendants, and its answer to the complaint was filed on March 13, 2003.   On March 1, 2004, Gorman filed its motion for summary judgment as to all seven plaintiff's claims.   The trial court heard the motion for summary judgment granting it in part finding no evidence of conspiracy as to Gorman.   Also, on March 16, 2004, the Plaintiffs' attorney agreed to dismiss Wilbert White and Israel Stewart as plaintiffs as to Gorman.   The trial court denied the remainder of the motion for summary judgment.

¶4.     On May 13, 2004, the claims of each plaintiff was severed by the trial court, and Hall's claim was set for trial on June 1, 2004.   The other four plaintiffs' cases were continued until further order of the court.   Gorman filed a motion for reconsideration of the denial as to Hall

Defendant, Gorman.

which was denied by the trial court on May 19, 2004. Gorman sought leave to file an interlocutory appeal from the trial court. The trial court denied the request.

¶5.    Gorman sought permission for interlocutory appeal to this Court (1) alleging improper use of unauthenticated documents by Hall and (2) seeking adoption by this Court of the "frequency, regularity, proximity" standard in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F. 2d 1156 (4th Cir. 1986), in the context of summary judgment for asbestos cases. Gorman also contends that Hall did not establish that any Gorman pump used at IP in Natchez contained any asbestos. On May 27, 2004, this Court granted the Gorman's extraordinary petition for interlocutory appeal. *See* M.R.A.P. 5. Due to the interlocutory appeal, the trial as to Gorman was stayed, however, Hall went to trial as to the remaining defendants. Finding error by the trial court, we reverse and render.

## FACTS

¶6.    Seven plaintiffs filed suit in Adams County, Mississippi, against some two hundred and seventy-four specifically named defendants, alleging exposure to asbestos while employed at various work sites, including IP. Gorman was one of the named defendants. During discovery, the plaintiffs responded to the defendants' master set of interrogatories and requests for production of documents.

¶7.    Hall did not specifically identify any asbestos-containing products for which Gorman might have potential liability and produced no documents related to Gorman's products. The response provided by Gorman only listed a generic list of products within IP without naming the manufacturers of the products. All seven plaintiffs were deposed. In Hall's deposition, he testified that IP had Gorman "sump pumps, thrash pumps, sewage pumps." Hall stated:

3

> [Y]ou had a Gorman[-]Rupp, which was a sump pump, which is nothing but a sewer pump. And it's [sic] collected and put it back into your sewer system so you can send it back to waste treatment or whatever sewer outlet you had to take up. But we had two of those mounted on the south side of the – in the machine room.

In the excerpt from Hall's deposition, provided by both parties in the record excerpts, Hall did not state that the Gorman pumps contained asbestos. Furthermore, in his deposition Hemphill testified that he did not have any knowledge of the Gorman pumps containing asbestos.

¶8.     During discovery, the Plaintiffs sent the Defendants over 70,000 documents that were produced by IP in Natchez in the unrelated asbestos case, *In Re: Asbestos Personal Injury Cases, Aldridge Lead No. 7419-J, et al.*, in the Circuit Court of Adams County, Mississippi.[2] The Plaintiffs attempted to authenticate the documents by filing a motion to authenticate the documents. At a hearing held on April 15, 2004, the trial court denied the Plaintiffs' request to authenticate the documents. The trial court found that the documents would have to be authenticated for use at trial. Gorman argues that the documents were never authenticated for use in the summary judgment proceedings as required by M.R.C.P. 56(c) and M.R.E. 901.

¶9.     Gorman also asserts that the documents do not show that any Gorman asbestos-containing products were in IP in Natchez. The only document that references Gorman is a letter dated November 11, 1983, from J. H. Wright and Associates that references IP's recent purchase order of a Gorman pump attaching a listing of recommended spare parts. Gorman contends that the letter is not admissible as it was never authenticated.

---

[2] The documents were produced in response to a subpoena duces tecum to IP in Natchez in the prior litigation involving the same IP facility.

4

¶10.    The Plaintiffs rely heavily on Gorman's response to the Plaintiffs' request for admissions to prove that Gorman had asbestos-containing products in IP.   In their response to request number 1, Gorman stated:

Request No. 1:        Admit that you are/were a miner, miller, manufacturer, labeler, labelee, rebrander, rebrandee, seller, supplier, distributor, licensee, or licensor of ACP(s).

Response:             Denied. Refer to Interrogatory Number 2.   The text of Interrogatory Number 2 is as follows: Gorman-Rupp refers to its Preliminary Statement and further objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, compound, vague and ambiguous. Subject to and without waiver of the foregoing objections, Gorman-Rupp did not rebrand its pumps, as it understands the term.   *Some* pumps *may* have incorporated asbestos-containing gaskets and/or packing purchased by Gorman-Rupp from vendors who primarily furnished materials from the following manufacturers: Anchor Target, Armstrong, Garlock, Vellumoid, John Crane, Durametallic and A Best Products Co.   The particular Gorman-Rupp pumps with asbestos-containing packing and/or gaskets were offered until approximately 1985 or 1986.

(emphasis added).

¶11.    Gorman contends that it admitted that *some* pumps manufactured out of the scores of models it manufactured incorporated asbestos-containing components.   However, it did not state that any Gorman pump in IP contained asbestos.   Gorman did not identify any pumps with asbestos-containing components being sold or supplied to IP.   In its response to request for admission number 2, Gorman stated:

Request No. 2:        Admit that you sold, supplied, or distributed your ACP to International Paper.

Response:             Neither admits nor denies – Refer to Answer to Interrogatory Number 3.   The text of Interrogatory

5

Number 3 is as follows: *Gorman-Rupp's available records do not allow it to search for and identify the sale of pumps to specific work sites*.

(emphasis added). Gorman argues that after discovery the Plaintiff did not demonstrate that in fact a Gorman asbestos-containing model was present at the IP site and caused the injury.

## DISCUSSION

¶12. This Court applies a de novo standard of review on appeal from a denial of summary judgment by the trial court. ***Saucier ex rel. Saucier v. Biloxi Reg'l Med. Ctr.,*** 708 So.2d 1351, 1354 (Miss. 1998). *See also **Jenkins v. Ohio Cas. Ins. Co.***, 794 So.2d 228, 232 (Miss. 2001); ***Russell v. Orr***, 700 So.2d 619, 622 (Miss. 1997); ***Richmond v. Benchmark Constr. Corp.***, 692 So.2d 60, 61 (Miss. 1997); ***Northern Elec. Co. v. Phillips***, 660 So.2d 1278, 1281 (Miss. 1995).

¶13. Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment shall be granted by a court if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact...". M.R.C.P. 56 (c); *see **Saucier***, 708 So.2d at 1354. The moving party has the burden of demonstrating that there is no genuine issue of material fact in existence, while the non-moving party should be given the benefit of every reasonable doubt. ***Tucker v. Hinds County***, 558 So.2d 869, 872 (Miss. 1990). *See also **Heigle v. Heigle***, 771 So.2d 341, 345 (Miss. 2000). A fact is material if it "tends to resolve any of the issues properly raised by the parties." ***Palmer v. Anderson Infirmary Benevolent Ass'n***, 656 So.2d 790, 794 (Miss. 1995).

¶14. "If, in this view, there is no genuine issue of material fact and, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied." ***Williamson ex rel. Williamson v. Keith***, 786 So.2d 390, 393 (Miss. 2001). "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." ***Tucker***, 558 So.2d at 872.

> Of importance here is the language of the rule authorizing summary judgment 'where there is no genuine issue of *material* fact.' The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense...the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact.

***Simmons v. Thompson Mach. of Miss., Inc.***, 631 So.2d 798, 801 (Miss. 1994)(citing ***Shaw v. Burchfield***, 481 So.2d 247, 252 (Miss. 1985)). The evidence must be viewed in the light most favorable to the non-moving party. *See* ***Russell***, 700 So.2d at 622; ***Richmond***, 692 So.2d at 61; ***Northern Elec. Co.***, 660 So.2d at 1281; ***Simmons,*** 631 So.2d at 802; ***Tucker***, 558 So.2d at 872.

¶15. To avoid summary judgment, the non-moving party must establish a genuine issue of material fact within the means allowable under the Rule. ***Richmond***, 692 So.2d at 61 (citing ***Lyle v. Mladinich,*** 584 So.2d 397, 398 (Miss. 1991)). "If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise the decision is affirmed." ***Richmond***, 692 So.2d at 61.

   *(A)      Unauthenticated Documents*

7

¶16. Gorman states that the record is clear that the trial court relied on the unauthenticated documents in deciding the summary judgment. Gorman argues that the trial court should not have considered the unauthenticated documents. M.R.E. 901 provides that authentication or identification of evidence is a condition precedent to admissibility. Gorman contends that M.R.E. 901 has not been satisfied. Gorman also asserts that Hall has not complied with the requirements of M.R.C.P. 56 (c) by submitting 70,000 unauthenticated documents, including the letter dated November 11, 1983, from J. H. Wright and Associates that references IP's recent purchase order of a Gorman pump, and no affidavit to support the documents.

¶17. The trial court's order denying the remainder of Gorman's motion for summary judgment and the order denying reconsideration of the denial does not specifically state that the trial court relied on the unauthenticated documents. However, the trial court's order on reconsideration does state that "there is evidence of the defendant's product being present at the work site in question and proximity to it by the plaintiff." In his deposition Hall stated that there were two Gorman pumps in the IP plant, but he did not state that asbestos was present. The unauthenticated letter only established that a Gorman pump was sold to IP at some point by J. H. Wright and Associates not that it contained asbestos components.

¶18. We find that under M.R.E. 901 and M.R.C.P. 56(c) the unauthenticated documents should not have been considered. However, the trial court's order does not specifically reference the documents in question. In any event, the letter does not place asbestos-containing products attributable to Gorman in the IP plant in Natchez.

     *(B)    Frequency, Regularity, Proximity*

¶19. Gorman asks this Court to adopt the "frequency, regularity, proximity" standard in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), in the context of summary judgment for asbestos cases. In *Lohrmann*, the United States Court of Appeals for the Fourth Circuit affirmed the directed verdict entered by the United States District Court of Maryland at the close of the appellant's case in favor of Raymark, Pittsburgh Corning, and Celotex. *Id.* at 1161. The court found there was "as a matter of law insufficient evidence to show the necessary element of causation between the use of their products and Lohrmann's claim of asbestos." *Id.* at 1162. The court reasoned:

> As asbestos litigation has developed over the past decade, most plaintiffs sue every known manufacturer of asbestos products, and during the course of discovery some of the defendants are dismissed on motions for summary judgment because there has been no evidence of any contact with any of such defendants' asbestos-containing products. Other defendants may be required to go to trial but succeed at the directed verdict stage. Some defendants settle prior to trial, and these are usually the defendants whose products have been most frequently identified by the plaintiff and his witnesses as having been used by the plaintiff or by others in his presence or working near him.

*Lohrmann*, 782 So.2d at 1162. In *Lohrmann*, the district court found that "the plaintiff had not proved a reasonable probability of causation between the plaintiff's disease and the products manufactured by Raymark, Celotex, and Pittsburgh Corning." The court concluded that the district court was correct in its ruling and the "use of the 'frequency, regularity and proximity test' was appropriate in determining whether the inferences raised by the testimony were within the range of reasonable probability so as to connect a defendant's product to the plaintiff's disease process." *Id.* at 1164. The court stated that the "frequency, regularity and proximity test" used by the district court in the context of asbestos cases was an application of the principle stated in *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230 (4th Cir. 1982). In

*Lovelace*, the court discussed the quantum of circumstantial evidence necessary to support a finding of a causal connection and that the permissible inferences must be within the range of reasonable probability. *Id.* at 241. *See Lohrmann*, 782 F.2d at 1163.

¶20.    While *Lohrmann* did not address a motion for summary judgment, the principle has been applied in the context of summary judgment. In *Jackson v. Anchor Packing Co.*, 994 F.2d 1295, 1303 (8th Cir. 1993), the Eighth Circuit adopted the principle discussed by the Fourth Circuit in *Lohrmann* holding:

> Accordingly, asbestos plaintiffs in Arkansas must introduce sufficient evidence to allow a jury to find that more likely than not their exposure to a particular defendant's product was a substantial factor in producing their injuries. We agree with the district court that the "frequency, regularity and proximity" test, as we interpret it, provides the correct articulation of this standard in asbestos-exposure cases. **Consequently, to survive a motion for summary judgment under Arkansas law, an asbestos plaintiff must show that the defendant's asbestos products were used with sufficient frequency and regularity in locations from which asbestos fibers could have traveled (sic) to the plaintiff's work areas that it is probable that the exposure to the defendant's asbestos products caused the plaintiff's injuries.**

(emphasis added).

¶21.    In *Chavers v. General Motors Corp.*, 79 S.W.3d 361 (Ark. 2002), the Arkansas Supreme Court adopted a test to determine the admissible evidence that must be demonstrated by the plaintiff in order to survive a motion for summary judgment relying the Eight Circuit's adoption of the *Lohrmann* test in *Jackson*, 994 F.2d at 1303. The court concluded that the "frequency, regularity, and proximity" test is the correct test to apply. The requirements set forth in *Chavers* are:

> (1) [Plaintiff] was exposed to a particular asbestos-containing product made by the [Defendant],

10

(2) With sufficient frequency and regularity,

(3) In proximity to where [Plaintiff] actually worked,

(4) Such that it is probable that the exposure to [Defendant's] products caused [Plaintiff's] injuries.

795 S.W.3d at 369.

¶22.    The court in *Chavers,* 79 S.W.3d at 367-69, reasoned:

We first consider Appellant's argument regarding the appropriate standard to be followed in determining if there is proof of causation in the present matter. Appellant argues that it was error for the trial court to apply the "frequency, regularity, and proximity" test to this case. This test represents another approach to the causation analysis that has been adopted by a majority of courts in dealing with asbestos cases.... This test has its origins in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir.1986). There, the appellants appealed a district court's grant of directed verdicts in favor of the manufacturers of asbestos-containing products. The appellants requested that the court adopt a rule that would find a jury question had been established as to whether that product contributed to the plaintiff's disease where the plaintiffs present any evidence that a company's asbestos-containing product was at the workplace while the plaintiff was at the workplace. In declining to adopt such a broad standard, the Fourth Circuit noted that such a standard would be contrary to Maryland's law on substantial causation. Instead, the court adopted the district court's enunciated standard: "Whether a plaintiff could successfully get to the jury or defeat a motion for summary judgment under such a theory would depend upon the frequency of the use of the product and the regularity or extent of the plaintiff's employment in proximity thereto." *Id.* at 1162. The *Lohrmann* court further noted that such a rule was in effect a *de minimis* rule in that a plaintiff is required to prove more than a casual or minimal contact with the product.

In *Jackson v. Anchor Packing Co.*, 994 F.2d 1295 (8th Cir.1993), the Eighth Circuit Court of Appeals, in reviewing a grant of summary judgment, affirmed the district court and held that if the issue was presented to us, the Arkansas Supreme Court would adopt the "frequency, regularity, and proximity" test in determining whether proximate cause had been proven in toxic-tort cases....  In affirming the summary judgment, the Eighth Circuit noted that the plaintiffs' expert witness did not visit the plant where the alleged asbestos exposure took place to determine air-flow patterns and the extent to which asbestos fibers could have been disseminated. Thus, the court determined that this expert's affidavit regarding the asbestos exposure was conclusory and did not provide a basis for denying summary judgment.

11

The Eighth Circuit again applied this "frequency, regularity, and proximity" test to an asbestos case in *Chism v. W.R. Grace & Co.*, 158 F.3d 988 (8th Cir.1998). There, the appellants, survivors of a man who died from malignant mesothelioma, sued the manufacturers of asbestos-containing products, alleging that the decedent's inhalation of asbestos from those products caused his injuries. Noting that the Eighth Circuit, as well as a majority of other courts, had adopted the *Lohrmann* test in establishing causation, the court stated that the test has four parts: (1) exposure to a particular product; (2) on a regular basis; (3) over an extended period of time; and (4) in proximity to where the plaintiff actually worked. The court then concluded that the appellants had failed to establish causation, because while they showed that the decedent was exposed to Zonolite vermiculite on a regular basis, they failed to establish that that (sic) product contained any asbestos that could have caused the asbestos-related form of cancer that caused the decedent's death. Finally, the court noted that the appellants had had (sic)ample time and opportunity to develop supporting expert testimony in an effort to avoid summary judgment.

Similarly, in *Wright v. Willamette Industries, Inc*., 91 F.3d 1105 (8th Cir.1996), the court reversed a circuit court's judgment in favor of the plaintiffs, holding that they failed to produce evidence that they were exposed to hazardous levels of formaldehyde from fibers that drifted from the defendant's plant.... [T]he court concluded that the appellees' failure to prove exposure at hazardous levels left them unable to carry their burden of proof on the issue of causation.

¶23.    In *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 171 (5th Cir. 1991), the Fifth Circuit stated "[t]he most frequently used test for causation in asbestos cases is the 'frequency-regularity-proximity' test announced in *Lohrmann*." The court determined that "*Lohrmann* recites the appropriate test for a minimum showing of producing cause in asbestos cases." *Id*.

¶24.    We find that the "frequency, regularity, and proximity" test discussed herein is the correct test to be applied in asbestos litigation and is hereby adopted by this Court. Based on the record, Hall falls short of meeting this test. Hall failed to submit any evidence that demonstrated that he had *any* exposure to an asbestos-containing product attributable to Gorman.

¶25. Here, this Court does not have to apply a detailed analysis under the "frequency, regularity, and proximity" test. Here, the evidence does not support that there is a fact in dispute to support denial of Gorman's motion for summary judgment. Hall has presented *nothing* to demonstrate that Gorman had any asbestos-containing product in IP in Natchez or that Hall was exposed to any asbestos-containing product attributable to Gorman that resulted in his alleged injuries. Without more in the record, we find that summary judgment in favor of Gorman is appropriate. Summary judgment is appropriate where a non-moving party who will bear the burden of proof at trial does not establish the existence of an essential element to his case. *See Galloway v. Travelers Ins. Co.*, 515 So.2d 678, 684 (Miss. 1987). Mere allegations of facts are not sufficient to create a genuine issue of material fact sufficient to defeat a motion for summary judgment. *Corey v. Skelton*, 834 So.2d 681, 684 (Miss. 2003). The trial court erred in denying Gorman's motion for summary judgment and subsequently Gorman's motion for reconsideration of the summary judgment decision.

## CONCLUSION

¶26. We find the trial court erred in denying summary judgment in favor of Gorman. Therefore, we reverse the judgment of the Circuit Court of Adams County, Mississippi, and render summary judgment here in favor of Gorman-Rupp.

¶27. **REVERSED AND RENDERED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**