¶ 1. Students and teachers of two Noxubee County schools, Earl Nash Elementary School (Nash) and B.F. Liddell Middle School (Liddell), filed suit against Stone Architecture, P.A. and several subcontractors (hereinafter collectively referred to as "Stone") that performed work at the schools, alleging fear of future disease due to asbestos exposure. Stone moved for and was granted summary judgment. The Appellants claim that genuine issues of material fact existed as to their claim for fear of future disease. Finding no error, we affirm.
 FACTS ¶ 2. Prior to the start of the 1997 school year, the Noxubee County School District undertook an energy upgrade project. In August of 1997, Stone installed a new heating, ventilation, and air conditioning system at Nash. Stone began work, which included roofing and updating the heating, ventilation, and air conditioning system, at Liddell, in October of 1997. Within a few weeks parents began complaining about the resulting dust and debris to which their children were being exposed. On November 3, 1997, Stone Architecture ordered the subcontractors to stop all work and suggested that the roofers have a dust analysis performed. On November 14, 1997, Earnest Pearl, a certified asbestos inspector, found that none of the work debris contained asbestos. In December 1997, the school board hired Environmental Management Plus (EMP), an asbestos abatement contractor, to conduct an air sampling at the schools. EMP detected the presence of asbestos. As a result, the schools closed early for Christmas break. *Page 352 
 ¶ 3. On January 2, 1998, the Appellants initiated the present action in the Noxubee County Circuit Court. After three amended complaints and the completion of discovery, Stone filed a motion for summary judgment on March 19, 2002. A hearing was held on March 8, 2004. The court granted Stone's motion for summary judgment on April 22, 2004.
 ANALYSIS Standard of Review ¶ 4. Summary judgment orders are reviewed de novo. Pitts v.Watkins, 905 So.2d 553, 555 (¶ 6) (Miss. 2005) (citing AetnaCas. Sur. Co. v. Berry, 669 So.2d 56, 70 (Miss. 1996)). This Court will reverse the trial judge's grant of summary judgment only if a triable issue of fact exists. Erby v. North Miss. Med.Ctr., 654 So.2d 495, 499 (Miss. 1995). Summary judgment is appropriate where a non-moving party who will bear the burden of proof at trial fails to establish the existence of an essential element of his case. Gorman-Rupp Co. v. Hall, 908 So.2d 749,757 (¶ 25) (Miss. 2005).
 ¶ 5. The Appellants' only claimed damages is "fear of future disease." Stone contends that Mississippi does not recognize fear of future disease as a cause of action. However, the Mississippi Supreme Court has indeed recognized fear of future disease as a basis for emotional distress claims.
 We have before found that emotional distress inflicted either negligently or intentionally is compensable. However, emotional distress based on the fear of a future illness must await a manifestation of that illness or be supported by substantial exposure to the danger, and be supported by medical or scientific evidence so that there is a rational basis for the emotional fear. We do not harm and, in fact, preserve a recovery for emotional distress when the same is based on such a foundation.
Leaf River Forest Products, Inc. v. Ferguson, 662 So.2d 648,650 (Miss. 1995) (emphasis added). Since the Appellants chose to bring their case before any manifestation of illness, in order to survive summary judgment, they were required to show that genuine issues of material fact existed regarding their (1) substantial exposure to asbestos and (2) medical or scientific evidence supporting the reasonableness of their emotional fear. We examine the admissible evidence presented on each element of the tort to determine whether summary judgment was properly granted.
 Substantial Exposure ¶ 6. Prior to beginning construction, Stone hired Hazclean Environmental Consultants, Inc. to conduct an engineering facility survey to identify and sample suspected asbestos containing materials (ACM)[1] on the roofs at Liddell and Nash. The Hazclean report revealed that no friable asbestos was detected during the survey, although non-friable ACM was detected in the roofing materials.[2] After concern arose over the content of the debris, G G Construction hired Ernest Pearl, a certified asbestos inspector, to determine if asbestos was present at Liddell. On November 14, 1997, Pearl tested samples from a Liddell ceiling and dust particles generated from construction inside *Page 353 
one of the classrooms. Pearl's polarized light microscopy (PLM) test showed that no asbestos was present in the samples.
 ¶ 7. In December 1997, the school district hired Environmental Management Plus (EMP) to test for the presence of asbestos in the Noxubee County Schools. Unlike Hazclean and Pearl, whose testing involved static air samples, EMP took air samples pursuant to the Asbestos Hazard Emergency Response Act (AHERA), 40 C.F.R. § 763. This method involved stirring up the air to be tested with a leaf blower. Using this methodology, EMP determined that Nash had acceptable clearance levels, but Liddell did not. Rather than having medical tests performed, the Appellants relied on the EMP air sample testing results to support their assertion that they had been exposed to asbestos.
 ¶ 8. Also in December 1997, Stone hired Environmental Evaluation and Control, Inc. (EE C) to perform an asbestos inspection by collecting samples of window sealant and glazing compounds on the ground at five Noxubee County schools, including Liddell and Nash, where new windows had recently been installed as part of the energy upgrade. EE C determined that the samples taken from Liddell and Nash tested positive for asbestos content. As for the condition of the ACM, EE C determined that since the material was on the ground, broken in small pieces, subject to continuing deterioration by exposure to weather, and subject to being crushed by pedestrian traffic, the ACM was considered friable or potentially friable.
 ¶ 9. The Mississippi State Department of Health (MSDH) also conducted an investigation after being contacted by several concerned parents. The stated purpose of the MSDH investigation was to determine the nature of the reported events and the extent of the potential health risks. Regarding any exposure to asbestos, MSDH ultimately found,
 Since the roofing material was a solid matrix of multiple materials, the data collected did not suggest a source of friable asbestos. Therefore, given the amount of roofing materials (composite dust) that fell from the ceiling during the construction process[,] exposure [to] friable asbestos was unlikely. However, there was a potential exposure from the other materials.
MSDH's findings as to potential health risks will be discussed below.
 ¶ 10. During discovery, Stone hired John W. Spencer, a certified industrial hygienist. Spencer opined that the testing performed by EMP is not generally accepted by industrial hygienists to determine actual exposure levels to occupants of the space tested, and that the appropriate testing involves static air samples. Spencer further stated,
 The methodology for taking air samples pursuant to 40 C.F.R. [§] 763 Final Rule, calls for an aggressive sampling, whereby the air is intentionally stirred up using a leaf blower to disturb any dust that may be present so that the air monitoring results reflect "worst" case conditions. Such clearance air monitoring is an accepted protocol to take air samples following the completion of an asbestos abatement activity to ensure that the activity is complete and that the area is safe to reoccupy. It is not, however, an acceptable method to determine the level of actual asbestos exposure to individuals occupying the sampled space. Results reached using such methodology would not be indicative of conditions [to which] the plaintiffs were exposed while they were occupying the classrooms during the course of the construction project. *Page 354 
 ¶ 11. In sum, the Appellants claim that Stone exposed them to asbestos. Stone claims that some of the construction materials contained non-friable asbestos which is not respirable. Further, Stone argues that the testing performed by EMP was inappropriate. Both sides submitted admissible evidence to support their positions regarding the Appellants' alleged substantial exposure to asbestos. What is the proper testing methodology to determine asbestos exposure to individuals occupying the sampled space, what is the relevance of exposure to non-friable versus friable asbestos, and whether the Appellants' potential exposure to any type of asbestos was substantial are material questions of fact. Accordingly, we find that there were triable issues of fact regarding the Appellants' alleged substantial exposure to asbestos.
 Medical/Scientific Evidence ¶ 12. The Appellants offered testimony from Drs. Gaeton Lorino and Arnold Brody to support their contention that their fears of developing asbestos-related disease in the future are reasonable. Dr. Lorino was admitted as an expert in the fields of pulmonary medicine and internal medicine. Dr. Lorino ultimately opined that the Appellants have a reasonable basis to be fearful for their health in the future because of their increased risk of developing certain cancers and asbestos-related diseases. Dr. Lorino specifically identified mesothelioma as a disease that the Appellants had an increased risk of developing because, in his opinion, it is not a dose-related disease.
 ¶ 13. Mississippi Rules of Civil Procedure Rule 56(e) requires that evidence in support of and in opposition to a summary judgment motion must be admissible evidence. In order to be admissible, expert testimony must be based upon sufficient facts or data and be the product of reliable principles and methods. M.R.E. 702. Also, the expert must apply the principles and methods reliably to the facts of the case. Id. In addition to the requirements of Rule 702, the admissibility of expert testimony is governed by the modified Daubert[3] standard adopted by the supreme court in Mississippi Transp. Comm'n v.McLemore, 863 So.2d 31, 35 (¶ 5) (Miss. 2003). In McLemore, the court stated,
 [T]he analytical framework provided by the modified Daubert standard requires the trial court to perform a two-pronged inquiry in determining whether expert testimony is admissible under Rule 702. . . . First, the court must determine that the expert testimony is relevant — that is, the requirement that the testimony must assist the trier of fact means the evidence must be relevant. Next, the trial court must determine whether the proffered testimony is reliable. Depending on the circumstances of the particular case, many factors may be relevant in determining reliability, and the Daubert analysis is a flexible one. Daubert provides an illustrative, but not an exhaustive, list of factors that trial courts may use in assessing the reliability of expert testimony. *Page 355 Id. at 38 (¶ 16) (internal citations and quotations omitted). For purposes of our analysis, we will assume that the trial court found the testimony of Dr. Lorino to be relevant, insofar as it pertained to the connection between non-occupational asbestos exposure and the potential for developing future disease.
 ¶ 14. We now examine the reliability of Dr. Lorino's opinion that the Appellants' non-occupational exposure to asbestos provides a reasonable basis for their fear of contracting future disease. In his testimony, Dr. Lorino stated that all asbestos-related diseases except for mesothelioma were dose-related diseases. Later in his testimony, Dr. Lorino admitted that he did not know how long the Appellants had been exposed to asbestos. If all asbestos-related diseases except mesothelioma are dose-related, and Dr. Lorino was unaware of the duration of the Appellants' exposure to asbestos, his opinion that the Appellants are at a greater risk for asbestos-related diseases other than mesothelioma is unreliable because it lacks the necessary factual foundation required to reach that conclusion.
 ¶ 15. Also, on cross-examination, Dr. Lorino was asked the basis for his opinion that mesothelioma was not a dose-related disease. He was unable to cite a single study or publication to support his assertion. Rather, Dr. Lorino repeatedly referred to "the literature" and "studies" in general. Courts are not required to "admit opinion evidence that is connected to existing data only by the ipse dixit of the expert," because self-proclaimed accuracy by an expert is an insufficient measure of reliability. Id. at 37 (¶ 13) (quoting Kumho Tire Co. v.Carmichael, 526 U.S. 137, 157, 119 S.Ct. 1167, 143 L.Ed.2d 238
(1999)).
 ¶ 16. Dr. Lorino also admitted that he had not met with any of the Appellants, had not reviewed their medical records, nor did he know a single Appellant's name. Although he knew how long the construction lasted, he did not know how long the Appellants had been exposed to the construction debris. Dr. Lorino also admitted that he could not identify the source of the asbestos. Finally, Dr. Lorino admitted that he was not familiar with how asbestos testing was done, nor the particulars of how the EMP data was generated. Clearly, Dr. Lorino's opinion was not based on sufficient facts. We find that Dr. Lorino's testimony failed the reliability prong of the Daubert/McLemore test as well as the requirements of Mississippi Rules of Evidence Rule 702.
 ¶ 17. Dr. Arnold Brody testified for the Appellants as an expert in the field of pathology. Although he gave interesting testimony on the effects asbestos has on the human body, he did not testify that the Appellants were likely to develop any asbestos-related diseases in the future, nor did he testify as to the rationality of their fears. In fact, Dr. Brody could not give any testimony relating to the Appellants because he did not know who the Appellants were, nor had he reviewed any materials relating in any way to them. All that he knew was that Appellants' counsel informed him that they had been exposed to asbestos. Accordingly, his testimony does not raise a question of material fact regarding the Appellants' claim.
 ¶ 18. Although we find that the Appellants failed to establish a genuine issue of material fact as to the second element of their claim, we briefly discuss the evidence put forth by Stone that the Appellants had no rational basis for fearing future disease. Below is a summary of the conclusion of the investigation performed by the Mississippi Department of Health, Office of Community Health Services, Division of Epidemiology, Surveillance Branch, *Page 356 
 Based on the best available data, it is very unlikely that cancer will result from indoor asbestos exposure, especially where ACM is well maintained. . . . In recent surveys, the measured asbestos levels in indoor air cast some doubt on whether occupant exposure to asbestos levels are contributed to significantly by ACM even when some of the material is friable or in bad condition. . . . Based on the test results, all air samples taken after construction are below the Occupational Safety and Health Administration permissible exposure level . . . [G]iven the findings of the investigators and the researched data presented, it is very unlikely that long term health effects will result from this short term problem.
Also, the Agency for Toxic Substances and Disease Registry Record of Activity examined the situation at the Noxubee County schools. The Agency found that the maximum asbestos level detected by EMP was 0.027 fibers/cc. The Agency cited a recent survey which reported asbestos levels in public buildings ranged from zero to 0.2 fibers/cc, and that short-term exposure to low levels of asbestos, which the Agency described as 0.2 fibers/cc or less, has not been shown to cause adverse health effects. Regarding the Noxubee County schools, the Agency concluded, "Adverse health effects other than minor upper respiratory and ocular irritation that may occur from exposure to indoor dust are not anticipated."
 CONCLUSION ¶ 19. Although there may have been a triable issue of fact regarding the Appellants' alleged exposure to asbestos, we find that no genuine issue of material fact existed as to the evidence required to show a rational basis for the Appellants' fear of future disease. Accordingly, the trial court's grant of summary judgment in favor of Stone is affirmed.
 ¶ 20. THE JUDGMENT OF THE NOXUBEE COUNTY CIRCUIT COURT ISAFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THEAPPELLANTS.
LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
[1] All materials determined to contain more than 1% of ANY type of asbestos are classified as ACM and must be handled in accordance with EPA and OSHA regulations pertaining to renovation and/or removal.
[2] Friable asbestos is non-encapsulated and respirable. Non-friable asbestos cannot be crumbled, pulverized, or reduced to powder by hand pressure.
[3] Daubert v. Merrell Dow Pharmaceuticals., Inc.,509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) set forth a non-exhaustive list of factors to consider in determining the reliability of an expert's testimony. These factors include (1) whether the theory or technique can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) whether, in respect to a particular technique, there is a high known or potential rate of error; (4) whether there are standards controlling the techniques operation; and (5) whether the theory or technique enjoys general acceptance within a relevant scientific community.