COLEMAN, Justice,
for the Court:
¶ 1. The instant case arises from a jury verdict awarding Mrs. Elsie Smith and *67 other wrongful death beneficiaries monetary damages for the wrongful death of Elsie’s husband, Larry Smith. Larry, who spent most of his life working on oil rigs, died of lung cancer, and the plaintiffs filed suit against several manufacturers of various drilling additives. She claimed that her husband’s proximity to working with these products led to his lung cancer because the drilling additives contained asbestos. After a jury verdict in favor of the plaintiffs, the defendant corporations filed a joint motion for a judgment notwithstanding the verdict (JNOV), which was granted by the trial judge. Plaintiffs appeal the grant of JNOV. We hold that the trial court erred when it granted JNOV by applying the plaintiffs’ proof to the frequency, regularity, and proximity test rather than to the elements of the plaintiffs’ negligent design claim sounding in products liability. Accordingly, we reverse and remand.

FACTS AND PROCEDURAL HISTORY

¶2. Larry Smith worked on various drilling rigs from the mid-1960s until the early 1990s. At the time, it was commonplace in the industry to use various chemical drilling additives that contained asbestos. Larry indisputably was a heavy smoker, smoking roughly two to three packs a day from at least the mid-1950s through at least 1986. He was diagnosed with lung cancer in August 2002 and died three months later.
¶ 3. On March 15, 2006, Elsie Smith’s and Larry’s heirs filed a wrongful death action against Union Carbide Corporation (“UCC”); Dow Chemical Company; Mon-tello, Inc. (“Montello”); Chevron Phillips Chemical Co. (“CPChem”); Baker Hughes; and Mississippi Mud, Inc., alleging that the negligent actions of the defendant led to their products causing Larry’s death. The claims against Dow Chemical were later dismissed as a result of a joint motion filed with the court. Mississippi Mud, Inc., later became part of Baker Hughes, and Baker Hughes settled before trial. Bringing a claim for strict liability under a products liability design defect theory, the plaintiffs asserted that Larry’s exposure to asbestos while working on various oil rigs over the years caused him to develop lung cancer. The products Vis-bestos and Super Visbestos were made with asbestos- supplied by UCC and distributed by Montello. Montello also distributed Shurlift. Flosal and Visquick were the asbestos products of CPChem. Both CPChem and UCC supplied asbestos for IMCO Best, Superbest, and Shurlift.
¶ 4. At trial, four former coworkers of Larry’s testified concerning his exposure to asbestos. One of the coworkers, Howard Case', who had worked with Larry at various drill sites, could identify the appel-lees’ products as those he had used at various rigs but admitted that he could not place a specific product with a specific rig at a gjven time. Case testified that he had worked with Smith at Barnwell in 1966, Reading & Bates in 1967-68, Big Chief Drilling in 1972, Helmerich & Payne in 1973-74, and Delta Drilling in 1976. He could not specify the exact extent to which Smith had used the asbestos viseosifiers, but he did state that Smith had used Flo-sal at Barnwell and Reading & Bates; Flosal, Visbestos, and Super Visbestos at Big Chief and Helmerich & Payne; and Visquick at Delta Drilling. A second coworker, Billy Jack Graves, identified five separate products of the appellees as being present at Rig 56, where he had worked with Larry for three months: Visbestos, Shurlift, Flosal, Superbest, and Visquick. He also stated that he had seen Larry work regularly with those products on that specific rig. A third coworker, Denver Anding, testified that Larry had worked with Flosal while they had worked differ *68 ent shifts on the same rig during a four-month period in the late 1960s. Joe Fitz-hugh, another coworker of Larry’s, also testified in his deposition that he had worked with Larry for about four months on a rig in the mid-to-late' 1960s and had mixed Flosal, Visquick, and Visbestos with him, but Social Security records of the two men show some discrepancies in his account. He also could not identify any physical attributes of the defendants’ products that he claimed to have worked with on the rig during the relevant time period.
¶ 5. After a three-week trial in May 2009, the jury returned a verdict in favor of the plaintiffs and assessed total damages of $3,856,346.17. The jury found CPChem to be 35% at fault, Montello 10%, UCC 35%, and Larry’s smoking 20%. Before sending the case to the jury, the defendants moved for a directed verdict, which the trial court denied. CPChem previously had made motions for summary judgment and directed verdict, but the court had withheld judgment on the motions. CPChem later was joined in the motions by the other defendants. After the verdict, the defendants subsequently filed motions for JNOV and for a new trial. On January 26, 2010, the court granted the JNOV for the sole reason that, in the court’s opinion, the plaintiffs had not meet the “burden of causation” because they had failed to establish that Larry had been exposed to a specific product on a frequent and regular basis in proximity to where he worked. Plaintiffs timely appealed.

STANDARD OF REVIEW

¶ 6. A motion for JNOV tests the legal sufficiency of the evidence supporting the verdict, not the weight of the evidence. Tharp v. Bunge Corp., 641 So.2d 20, 23 (Miss.1994).
Where a motion for j.n.o.v. has been made, the trial court must consider all of the evidence — not just evidence which supports the non-movant’s case — in the light most favorable to the party opposed to the motion. The non-movant must also be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point so overwhelmingly in favor of the mov-ant that reasonable [jurors] could not have arrived at a contrary verdict, granting the motion is required. On the other hand, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fairminded [jurors] in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the jury’s verdict allowed to stand. See, e.g., General Tire and Rubber Co. v. Darnell, 221 So.2d 104, 105 (Miss.1969); Paymaster Oil Co. v. Mitchell, 319 So.2d 652, 657 (Miss.1975); City of Jackson v. Locklar, 431 So.2d 475, 478 (Miss.1983).
3M Co. v. Johnson, 895 So.2d 151, 160-61 (¶ 31) (Miss.2005) (quoting Jesco, Inc. v. Whitehead, 451 So.2d 706, 713-14 (Miss.1984)). The Court reviews a trial court’s grant of a JNOV de novo. Wilson v. Gen. Motors Acceptance Corp., 883 So.2d 56, 64 (¶ 24) (Miss.2004).

DISCUSSION

¶ 7. The issue presented by the plaintiffs is whether the circuit court erred by granting the appellees’ motion for JNOV based on the court’s determination that the plaintiffs had failed to pass the frequency, regularity, and proximity test. To answer, we must determine whether the trial court erred in analyzing the plaintiffs’ claim under the de minimis “frequency, regularity, and proximity” test in determining whether or not to grant the motion for JNOV.
*69 I. Whether the trial court erred in analyzing the plaintiffs’ claim under the de minimis “frequency, regularity, and proximity” test in determining whether or not to grant the motion for JNOY.
¶ 8. The defendant companies argue that the circuit court correctly granted JNOV because the plaintiffs failed to satisfy the “frequency, regularity, and proximity” test first established in Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156 (4th Cir.1986), and adopted by the Court in Gorman-Rupp Co. v. Hall, 908 So.2d 749 (Miss.2005). In fact, they relied upon the “frequency, regularity, and proximity” test in their motion for JNOV, and indeed we have written, “[W]e again hold that in asbestos litigation cases, the frequency, regularity, and proximity test is the proper standard in determining exposure and proximate cause” in the context of a motion for summary judgment or directed verdict. Monsanto Co. v. Hall, 912 So.2d 134, 137 (¶ 8) (Miss.2005). As stated in Gorman-Rupp Co.,
[t]he requirements [of the “frequency, regularity, and proximity” test] ... are:
“(1) [Plaintiff] was exposed to a particular asbestos-containing product made by the [Defendant],
(2) with sufficient frequency and regularity,
(3) in proximity to where [Plaintiff] actually worked,
(4) such that it is probable that the exposure to [Defendant’s] products caused [Plaintiffs] injuries.”
Gorman-Rupp Co., 908 So.2d at 756 (¶ 21) (quoting Chavers v. Gen. Motors Corp., 349 Ark. 550, 562, 79 S.W.3d 361, 369 (2002)). The Court expressly added product identification to the test in Monsanto Co., 912 So.2d at 137 (¶ 8).
¶ 9. The case sub judice evidences confusion regarding the applicability of the “frequency, regularity, and proximity” test.
In Lovelace v. Sherwin-Williams, 681 F.2d 230 (4th Cir.1982), we discussed the quantum of circumstantial evidence necessary to allow a finding of causal connection and held that permissible inferences must be within the range of reasonable probability. See 681 F.2d at 241. The “frequency, regularity, and proximity test” used by the district court is an application of this principle in an asbestosis setting.
Lohrmann, 782 F.2d at 1163. “The Lohrmann court further noted that such a rule was in effect a de minimis rule in that a plaintiff is required to prove more than a casual or minimal contact with the product.” Gorman-Rupp Co., 908 So.2d at 756 (¶ 22). In Gorman-Rupp Co., the Court was asked to apply the “frequency, regularity, and proximity” test solely “in the context of summary judgment for asbestos cases.” Gorman-Rupp Co., 908 So.2d at 754-55 (¶ 19). Further, in Chavers, on which the Court heavily relied in adopting the “frequency, regularity, and proximity” test, the Arkansas Supreme Court adopted the test “to determine the admissible evidence that must be demonstrated by the plaintiff in order to survive a motion for summary judgment. ...” Gorman-Rupp Co., 908 So.2d at 756 (¶ 21) (emphasis added).
¶ 10. We are unable to identify any Mississippi case, other than Phillips 66 Co. v. Lofton, 94 So.3d 1051 (Miss.2012), in which the “frequency, regularity, and proximity” test is applied outside the context of a motion for summary judgment. See Gorman-Rupp Co., 908 So.2d 749; Monsanto Co., 912 So.2d 134. Federal courts applying Mississippi law also have applied the “frequency, regularity, and proximity” test only in the context of sum *70 mary judgment. See Dufour v. Agco Corp., 2009 WL 700769 (S.D.Miss. Mar.13, 2009); Dalton v. 3M Co., 2011 WL 5881010, *1 (E.D.Pa. Aug.2, 2011) (“The plaintiff must prove product identification, exposure, and proximate cause with regularity, frequency, and proximity in order to survive summary judgment.”). In fact, of all the jurisdictions and federal circuit courts which have adopted the test, we can find only one example of the test being used as the basis for JNOV. Tragarz v. Keene Corp., 980 F.2d 411 (7th Cir.1992).
¶ 11. In Phillips 66 Co., the Court applied, in dicta, the “frequency, regularity, and proximity” test in the context of an appeal after the jury had returned a verdict for the plaintiff. Phillips 66 Co., 94 So.3d at 1062 (¶ 29). The Court remanded that case for a new trial as a result of evidentiary issues. Id. at 1070 (¶ 58). In no other Mississippi case has the “frequency, regularity, and proximity” test been applied as anything other than a de mini-mus test, applied to decide whether a plaintiffs claim would be allowed to proceed past summary judgment or directed verdict, and we today hold that such is the proper limit of its utility.
¶ 12. In 1993, the Mississippi Legislature codified the Mississippi Products Liability Act, setting the elements of products liability claims. Williams v. Bennett, 921 So.2d 1269, 1273 (¶ 13) (Miss.2006). With the Legislature having created a statutory scheme for products liability, it is not for the Court to add or subtract from those delineated elements.[1] “The duty of this Court is to interpret the statutes as written. It is not the duty of this Court to add language where we see fit. ‘[Ojur primary objective when construing statutes is to adopt that interpretation which will meet the true meaning of the Legislature.’” Stockstill v. State, 854 So.2d 1017, 1022-23 (¶ 13) (Miss.2003) (quoting Anderson v. Lambert, 494 So.2d 370, 372 (Miss.1986)). Since the enactment of the Products Liability Act, “products liability claims have been specifically governed by statute, and a claimant, in presenting his case, must pay close attention to the elements of the cause of action and the liability limitations enumerated in the statute.” Williams, 921 So.2d at 1273 (¶ 13). It is the trial court’s job — as it is ours — when considering a motion for JNOV to apply the evidence to the elements of a plaintiffs claim. InTown Lessee Assocs., LLC v. Howard, 67 So.3d 711, 718 (¶22) (Miss.2011) (“In essence, judgments as a matter of law present both the trial court and the appellate court with the same question — whether the evidence, as applied to the elements of a party’s case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated.”); Wilson v. Gen. Motors Acceptance Corp., 883 So.2d 56, 63 (¶ 22) (Miss.2004).
¶ 13. We clarify today that the “frequency, regularity, and proximity” test is a de minimis rule employed to determine whether a plaintiff has successfully made a prima facie case solely in the context of summary judgment or directed verdict. Justice Kitchens, in his dissent, criticizes us for doing so, but the weight of the authority detailed above, which neither dissent addresses, compels the result we *71 reach. As Justice Kitchens writes, the test is a legal one. However, once consideration of the facts of the case are in the hands of the jury, our Legislature has mandated the elements for the jury to consider. At the jury consideration stage, the “frequency, regularity, and proximity” test falls away, and a plaintiff must demonstrate the elements of a design defect product liability claim as delineated in Mississippi Code Section 11-1-63, including proximate causation. See Miss.Code Ann. § 11-1-63 (Rev.2002).
¶ 14. Because the jury must consider the elements of the claim as established by the Legislature, the court must match the evidence to those elements rather than to the judicially created frequency, regularity, and proximity test when considering a JNOV motion. The “frequency, regularity, and proximity” test is a legal determination, not to be determined by the fact-finder. Today’s clarification does not conflict with the holding of Phillips 66 Co., as our discussion of the test therein appeared only in dicta.
¶ 15. In the context of the motion for JNOV now before us, the trial court erred as a matter of law when it applied the “frequency, regularity, and proximity” test outside a summary judgment or directed verdict situation[2] Instead, the trial court should have matched the plaintiffs’ proof against the statutory elements of a design defect products liability claim, just as would be required in any nonasbestos negligent design litigation.[3] Nothing in Section 11-1-63 indicates that the Legislature intended to create a separate class of litigation for asbestos eases. Because the trial court erred in applying the “frequency, regularity, and proximity” test to the plaintiffs’ claim instead of the statutory elements of plaintiffs’ negligent design claim, we reverse the trial court’s grant of JNOV and remand for further proceedings consistent with our opinion.

CONCLUSION

¶ 16. The trial court erred when it applied the “frequency, regularity, and proximity” test to the plaintiffs’ claim instead of the well-established proximate cause analysis as required under the Mississippi Products Liability Act. Miss.Code Ann. § 11-1-63 (Rev.2002). Accordingly, the trial court erred in its grant of judgment notwithstanding the verdict. Thus, the judgment of the Circuit Court of Smith County is reversed and the case is remanded for further proceedings consistent with the instant opinion, including reconsideration of the grant of JNOV in accordance with the statutorily established elements of the plaintiffs’ negligent design claim.
¶ 17. REVERSED AND REMANDED.
WALLER, C.J., AND DICKINSON, P.J., CONCUR. LAMAR, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER AND KING, *72 JJ.; LAMAR, J., JOINS IN PART. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ. RANDOLPH, P.J., AND PIERCE, J., NOT PARTICIPATING.

. In his dissent, Justice Kitchens cites C & C Trucking Co. v. Smith, 612 So.2d 1092, 1098 (Miss.1992), for the proposition that a judge applies the same legal standards when considering a motion for JNOV as when faced with a motion for directed verdict. However, nothing in C & C Tmcking contradicts the proposition that a court considering either applies the evidence to the elements of the claim. Accordingly, it does not contradict the result reached here, that a court which applies the evidence to a list of factors not elements of the claim, errs.

. Although not raised by the parties, we take the opportunity to point out a logical consequence of today's holding, that trial courts err in instructing juries as to the "frequency, regularity, and proximity” test, which is a legal determination not for the finder of fact.

. Justice Kang's dissent finds enough evidence to support the verdict under the elements found in the negligent design products liability statute. However, the trial court did not analyze the motion for JNOV pursuant to the elements of the statute, and the parties did not argue that the evidence did or did not meet the elements of the statute in their briefs.